UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LARRY DANIELS, ET AL.           CIVIL ACTION NO. 09-cv-0713

VERSUS                          JUDGE HICKS

TAUREN EXPLORATION, INC.        MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Tauren Exploration, Inc. ("Tauren"), on various dates in 2004 and 2005, obtained substantially similar leases from the 24 owners of 13 tracts of land in Caddo Parish, Louisiana. The 13 leases were executed on various dates, so their three-year primary terms expire on different dates. In April 2009, about four years after most of the landowners signed the three-year leases, the landowners filed a declaratory judgment action in state court that prayed for a declaration that their leases had expired by their terms. The landowners also alleged that they are entitled to recover damages and attorney's fees because Tauren did not timely honor their demands for a recordable act evidencing the extinction or expiration of the leases. See La. R.S. 31:206 and 207. Tauren removed the case based on an assertion diversity jurisdiction.

All but one of the 24 landowner-plaintiffs are citizens of Louisiana. Plaintiff Flora Faye Patton is a citizen of Texas. Tauren is also a citizen of Texas, so there is not complete diversity on the face of the state court petition. Tauren nonetheless removed the case,

asserting that Patton's Texas citizenship should be ignored because Patton was improperly joined because her claim lacks merit (due to certain oil and gas operations that Tauren alleges extended the term of the lease). Plaintiffs have filed a Motion to Remand (Doc. 8) to challenge the improper joinder assertion. For the reasons that follow, it is recommended that the motion be granted.

**Improper Joinder Framework**

The framework for examining improper joinder was established in the Fifth Circuit's en banc decision in Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 (5th Cir. 2004). See also Rico v. Flores, 481 F.3d 234, (5th Cir. 2007). The context in Smallwood was an alleged improper joinder of a defendant, which is the situation in which the doctrine is most often applied. In this case, however, there is an assertion that a plaintiff was improperly joined. Courts have held that the Smallwood doctrine of improper joinder applies equally to plaintiffs, allowing courts to ignore the citizenship of a plaintiff who has no viable claim. Riles v. Stevens Transportation, Inc., 2006 WL 3843029, (W.D. La. 2006) (collecting cases); and Miller v. Home Depot, U.S.A., Inc., 199 F. Supp. 2d 502, 508 (W.D. La. 2001). Otherwise, a plaintiff could always prevent removal simply by joining a non-diverse plaintiff, regardless of the merits of that plaintiff's claims.

Smallwood holds that, in the context of a claim that a defendant has been improperly joined, there are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the

non-diverse defendant in state court. Smallwood, 385 F.3d at 573, citing Travis v. Irby, 326 F.3d 644, 646-48 (5th Cir. 2003). There is no claim of actual fraud in this case. With respect to the second way, the question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. The test must be modified in this case to reflect that it is the removing defendant who asserts that a non-diverse plaintiff has been improperly joined. The question is whether Tauren has demonstrated that there is no reasonable basis for the district court to predict that Patton could prevail against Tauren. If Tauren meets that burden, improper joinder has occurred, and the requirements for diversity jurisdiction will have been satisfied. If not, the case must be remanded for lack of subject matter jurisdiction.

Smallwood established that a court may answer the question in one of two ways. First, the court may conduct a Rule 12(b)(6)-type analysis to determine whether Patton's allegations state a claim under state law against Tauren. Smallwood states that "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge there is no improper joinder." Smallwood, 385 F.3d at 573.

Tauren states in its memorandum that it "does not contend that Patton's allegations fail to comport with Rule 12(b)(6)," so it does not address the issue. Rather, Tauren bases its improper joinder plea on Smallwood's provision – after the Court noted that a Rule 12(b)(6)

inquiry should ordinarily resolve the issue – that "there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." Id. The Court permitted that: "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id.

The permitted extent of such a piercing exercise, if the court exercises its discretion to pierce the pleadings, is potentially at issue in this case, so this passage from Smallwood is particularly applicable:

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of **discrete and undisputed facts** that would preclude plaintiff's recovery against the in-state defendant. ... We emphasize that any piercing of the pleadings should not entail substantial hearings.

Smallwood, 385 F.3d at 573-74 (emphasis added; internal footnote omitted).

**Analysis**

Patton's lease provides that it shall be for a primary term of three years (which would expire May 26, 2008) and as long thereafter as "(1) oil, gas, sulphur, or other minerals is produced from said land hereunder or from land pooled therewith or (2) it is maintained in force in any other manner herein provided."

Tauren asserts that it has adduced "summary judgment-like evidence, establishing the 'presence of discrete and undisputed facts' that would preclude Patton's recovery" despite the fact that more than three years have passed since the lease went into effect. Tauren first

points to a provision in Patton's lease regarding continuation of the term if certain operations are underway:

> 6. [I]f at the expiration of the primary term..., oil, gas, sulphur or other mineral is not being produced on said land or on land pooled therewith, but [Lessee] is then engaged in operations for drilling, completion or reworking thereon, or operations to achieve or restore productions,... this lease shall remain in force so long thereafter as Lessee either (a) is engaged in operations for drilling, completion or reworking, or operations to achieve or restore production, with no cessation between operations or between such cessation of production and additional operations of more than ninety (90) consecutive days; or (b) is producing oil, gas, sulphur or other mineral from said land hereunder or from land pooled therewith.

Calvin Wallen, III, Tauren's president, testifies by affidavit about Tauren's activity on the leased property. His testimony is fairly summarized as follows:

> Patton's 7.5 acres was included in the HA RA SUF drilling and production unit. The HA RA SUF; Daniels 3-1 well (the "well") was spudded by Tauren on October 14, 2007 (several months before the end of the primary term on May 26, 2008).
>
> Tauren encountered delays "due to causes beyond the control of Tauren," including the inability of the completion services company, Schlumberger, to provide reliable frac and completion plans for what was then the newly emerged Haynesville Shale interval. There was also a shortage of contractors and equipment during that time.
>
> Thereafter, Tauren drilled the well to total depth; ran production casing; engaged in a series of specialized well logging tests to investigate what would be among the earliest vertical Haynesville Shale completions; undertook, in conjunction with its consulting completion engineer, to devise a completion plan for this potentially productive, but as yet unproven, zone of production; and built a pipeline to the wellsite.
>
> In May of 2008 - in the weeks preceding the end of the primary term of Patton's lease - Tauren moved and set a series of frac tanks onto the well site (May 1-6, 2008); transferred 338 barrels of sodium chloride solution into those tanks (May 1-6, 2008); changed out the tubing head and casing on the well from a 5,000 pound to a 10,000

> pound test to accommodate what was expected to be an overpressurized formation (May 15, 2008); installed a 10,000 pound test frac valve (May 15, 2008); and tested the tubing head and casing to 5,000 pounds (May 22, 2008).
>
> The primary term of Patton's lease ended on May 26, 2008.
>
> Within 90 days following the end of the primary term of Patton's lease, Tauren perforated the Haynesville Shale interval, fraced the formation, completed the well, and turned it to production.
>
> Specifically, the well was completed on July 29, 2008. Wallen testifies in paragraph 16 of his affidavit, "Since completion, the well has consistently and without interruption produced natural gas ...." In paragraph 8, Wallen offers slightly different testimony that completion was July 29, and the well "has produced natural gas since August of 2008."

Tauren asserts that these facts demonstrate that at the expiration of the primary term of Patton's lease, on May 26, 2008, Tauren was "engaged in operations for drilling, completion or reworking, or operations to achieve or restore production, with no cessation between operations or between such cessation of production and additional operations of more than ninety (90) consecutive days." If that were a discrete and undisputed fact, as Tauren alleges, the requirements of Section 6 of Patton's lease would be met, Patton's lease would be extended beyond its primary term, and she would have no possibility of obtaining a declaratory judgment against Tauren.

However, Patton *does dispute* the assertion that Tauren was "engaged in operations...to achieve or restore production" at the expiration of the primary term of her lease. Patton and the other plaintiffs say that most of the facts offered by Mr. Wallen about Tauren's activities in the weeks preceding the end of the primary term of the lease "are

utterly and absolutely **<u>disputed by plaintiffs</u>**" (emphasis in original), along with Tauren's conclusion that its activities amount to continuous operations within the meaning of Louisiana law. The plaintiffs admit that they have no summary judgment-like evidence to counter Tauren's factual assertions, but they note that discovery is in its infancy, leaving them with no means to investigate and contest Tauren's claims. The plaintiffs say Tauren is asking the court to "take its word" that all the facts are true and that it should win the dispute over Patton's lease.

The plaintiffs, despite little opportunity for discovery, have been able to show an apparent inconsistency by Mr. Wallen in his explanation for delays in completing the well. In his affidavit, Wallen says the reasons for delay included the inability of the completion services company, Schlumberger, to provide reliable frac and completion plans. However, Wallen wrote in a letter to landowners: "If a well is not completed yet, it is because there is no pipeline constructed to the well location." Doc. 11, Ex. B. In a deposition, Wallen said he did not recall ever saying that the lack of a pipeline was the only reason for delay. Wallen also admitted that Tauren's operating company had been able to frac several wells in the late months of 2007 and the first months of 2008. Doc. 15. The reason for the delay may or may not be important with regard to the Patton lease, but suffice it to say these issues give the court pause in disposing of Patton's claim based solely on the testimony of Wallen without the opportunity for Patton to conduct discovery and fully present her case.

The undersigned is of the opinion that the findings Tauren asks the court to make exceed the scope of the limited improper joinder inquiry permitted by law. Smallwood provided examples of the type of inquiry appropriate under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that can easily be disproved if not true." Id. 385 F.3d at 574 n. 12, citing Travis v. Irby, 326 F.3d 644, 648-49 (5th Cir.2003). Here, Tauren aks the court to find that it was, at the relevant times, "engaged in operations...to achieve or restore production," which is a much broader type of finding. Also, Tauren has not cited Louisiana law authority that would leave no doubt that what Tauren claims it was doing on the property was sufficient to extend the term of the lease.

It would not be fair to Patton or similarly situated plaintiffs to issue a ruling on the viability of Patton's claim without allowing Patton to conduct discovery about Tauren's operations. The operations may have occurred far from Patton's land, but within the relevant unit, so Patton would not have a fair and meaningful chance to contest Mr. Wallen's affidavit without discovery. Smallwood cautions that in an improper joinder contest:

> Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the

> requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

The discovery that would have to occur to allow Patton to fairly respond to Wallen's testimony would likely be similar in scope to the discovery that would occur if the parties were preparing for trial on the merits. There would be nothing so simple and quick as determining that a defendant doctor never treated a plaintiff patient. After the joinder-related discovery, and the resulting decision on the joinder issue, much or perhaps even most discovery and decisionmaking in the entire case would be complete.

The breadth of impact of a "pierced pleadings" ruling would also run up against another aspect of <u>Smallwood</u>. "When the proffered justification for improper joinder is equally dispositive of all plaintiffs rather than to the in-state plaintiffs alone, the requisite showing has not been made." <u>Smallwood</u>, 385 F.3d at 575. In other words, if a holding that Patton has no reasonable basis for a claim compels the same result for the other plaintiffs, there is no improper joinder, but only a lawsuit lacking merit. In such circumstances, the case must be remanded to the state court for a determination of the merits.

If Tauren were able to demonstrate that Patton has no possibility of recovery, it would largely be dispositive of most but not all of the claims of the other plaintiffs. The leases were signed on different dates, so their primary terms expire on different dates. Any factual determination as to whether Tauren was "engaged in operations...to achieve or restore production" would apply equally to all leases with primary terms ending on or after the end date of Patton's primary term, or May 26, 2008. Based on information that Tauren provides

about when the primary term expired on the other leases, a holding that there is no reasonable basis for the district court to predict recovery for Patton would likely support a dismissal of the claims of the 14 (out of 24) plaintiffs who signed a lease on or after May 26, 2005. That would resolve the essential issue regarding 8 of the 13 leases.

A holding against Patton is not dispositive of the claims of all other Plaintiffs, so the common defense doctrine may not mandate remand, but the resolution of more than half the claims in a 24 plaintiff case must at least flirt with running afoul of the doctrine and provide a factor for the court to consider in determining whether to pierce the pleadings.

Smallwood makes clear that the improper joinder inquiry is to be limited, and "the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court." 385 F.3d at 573. The undersigned finds that the best exercise of this court's discretion is to *not* pierce the pleadings in this case. To do so would require the court to engage in a factfinding exercise that would go well beyond a summary inquiry into "discrete and undisputed facts" that may have been omitted or misstated by Patton, and the joinder ruling would essentially decide the claims of more than half the plaintiffs. To do so would go beyond the limited role of improper joinder analysis, which is intended to do no more than decide whether the court has subject matter jurisdiction over a removed case.

When the pleadings are not pierced, the inquiry is under the Rule 12(b)(6) standard. Tauren offers no argument that Patton's allegations fail to satisfy that standard, and the court finds that Patton has pleaded a claim on which relief may be granted if the facts alleged are

true. Thus, Patton is not improperly joined, and the plaintiffs' motion to remand should be granted because the court lacks diversity jurisdiction.

It is unfortunate for the sake of judicial economy that this is the result, because there is a similar single-plaintiff case pending in this court that does not suffer from a lack of diversity of citizenship. See Ladner v. Tauren, 08-CV-1725. If both cases remained in federal court, the cases would likely be consolidated. Now, however, the state court will proceed with this Daniels case while the Ladner case is litigated in federal court. The court ordinarily strives to promote judicial economy, but it does not appear that it is a consideration that would permit disregard of the governing law regarding the limited scope of the improper joinder inquiry.

**Attorney Fees**

The plaintiffs also pray for an award of attorney fees pursuant to 28 U.S.C. § 1447(c). The statute provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. There is no presumption in favor of awarding fees following a remand, and the use of the term "may" in Section 1447(c) leaves the district court with discretion, with no heavy congressional thumb on either side of the scales. Martin v. Franklin Capital Corporation, 126 S.Ct. 704 (2005).

That discretion is to be guided by the standard that: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an

objectively reasonable basis for seeking removal." Id. at 711. "Conversely, when an objectively reasonable basis exists, fees should be denied." Id. The district court also retains discretion to consider whether unusual circumstances warrant a departure from that rule in a given case. Id.

The undersigned finds that the plaintiff's have the better argument on the contest over their motion to remand, but Tauren nonetheless had an objectively reasonable basis to remove the case. It presented facts that suggest Patton's lease was continued, and it made reasonable arguments under the applicable law that the court should consider those facts and allow the removal. Regrettably, plaintiffs' brief characterized Tauren's removal in a very uncharitable way. Memorandum, p. 1 (third paragraph). That characterization is not repeated herein, and it should not be used by any attorney or party in this court again.

The request for attorney fees should be denied.

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Remand** be **GRANTED** and this case be remanded to the First Judicial District Court, Caddo Parish, Louisiana, where it was pending as suit no. 530,138.

**IT IS FURTHER RECOMMENDED** that the request for attorney fees be **DENIED**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of August, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE